IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| RIVETT GROUP, LLC, et al., | ) |
| | ) Case No. 4:08CV00029 |
| Plaintiffs, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CHELDA, INC., et al., | ) |
| | ) By: Jackson L. Kiser |
| Defendants. | ) Senior United States District Judge |
| | ) |

Before me is the Motion for Summary Judgment of Defendants Chelda, Inc. ("Chelda") and Ham's Restaurants, Inc. ("Ham's"). The joint Motion has been thoroughly briefed by all parties, and I heard oral argument on September 17, 2009. This matter is now ripe for decision. For the reasons given below, I will **GRANT** the Motion for Summary Judgment with respect to Chelda but **DENY** the Motion with respect to Ham's.

**I.     STATEMENT OF FACTS**

Defendant Ham's hired Defendant David Byers ("Byers") on June 1, 2005, for Ham's manager-in-training ("MIT") program. (Schumacher Aff. ¶ 4.) Ham's is a wholly owned subsidiary of Defendant Chelda. (Id. at ¶ 2.) Although Byers lived in Winton-Salem, NC, Ham's sent Byers to the company's Danville restaurant location to complete the six- to eight-week MIT program. (Byers Dep. 5-6.) Ham's provided Byers accommodations at Plaintiff's Super 8 Motel, located adjacent to the Ham's restaurant,[1] for the duration of Byers' stay. (Id. at

---

[1] Ham's Restaurant is located at 2373 Riverside Drive. The Super 8 is located next to Ham's at 2385 Riverside Drive.

1

6.) Ham's allegedly required Byers to stay at the hotel during the program and would not permit him to commute from Winton-Salem. (Id. at 6, 38.) Except for a few sporadic days,[2] Byers stayed at the Super 8 for more than three weeks before the incident giving rise to this litigation. (See Ex. D, Super 8's Transactions Pertaining to Byers' Stay 1-4.) According to Ham's Danville Manager, the company housed trainees at the Danville Super 8 because of the hotel's convenient location. (Robertson Dep. 25-26.) Ham's set up an account with Super 8 allowing the hotel to bill Ham's directly at a discounted rate. (Id. at 26-27.) Chelda also housed employees at the Super 8 from time to time, and the hotel maintained a single account to bill both Ham's and Chelda. (Mallot Dep. 23.)

Byers may or may not have worked at Ham's on July 19, 2005.[3] It is undisputed, however, that Byers was at Ham's for some period of time that day and had dinner there at Ham's expense. (Byers Dep. 8-10; Robertson 46.) He was scheduled to work on July 20 and therefore stayed at the Super 8 the night of July 19 and morning of July 20. (Robertson Dep. 46.) As before, Ham's paid for Byers' stay. (Ex. D, Super 8's Transactions Pertaining to Byers' Stay 1.)

At some point, most likely around 3:10 A.M. on the morning of July 20, a fire started in the trash can in Byers' room. (Irving Dep. 24.) Byers testified that he awoke feeling heat on his arm in the early morning hours to find his shirt singed and a small fire burning in the trash can and on the side of the mattress. (Byers Dep. 14.) It is unclear what caused the fire. Plaintiffs allege the fire started when Byers discarded a cigarette butt into the trash can. (Mem. Supp. Pls.'

---

[2] Byers stayed at the Super 8 from June 28 to July 2, 2005. (Ex. D, Super 8's Transactions Pertaining to Byers' Stay 4.) He then returned to the Super 8 from July 5 to July 15. (Id. at 2-3.) His final stay was the night of July 19 and morning of July 20. (Id. at 1.)

[3] Byers testified that he worked that day, attending an in-store manager meeting. (Byers Dep. 8-9.) This account is supported by the testimony of Super 8's Manager, Donna Mallot. (Mallot Dep. 35-36.) However, Ham's Manager, Shaun Robertson, and Human Resources Director, Lindsey Schumacher, allege that Byers did not work that day. (Robertson Dep. 46-47; Schumacher Aff. ¶ 6.)

Resp. Opp'n Mot. Summ. J. Chelda & Ham's 2; Ex. G, Termination Notice; Alderman Dep. 13.) Byers maintains some other managers and managers-in-training had been smoking in his room and dumped the ash tray into the trash. (Byers Dep. 12-14, 46-47.) In any event, the fire caused damage to the trash can, bed, and frame. (Irving Dep. 31-32.) The sprinklers came on, preventing the fire from spreading further. (Id. at 54.) The water from the sprinklers, however, caused more damage than the fire. (Id.) As a result of the fire and water damage, some portion of the hotel had to be closed for the week.[4] (Ex. G, Termination Notice; Byers Dep. 62.)

Byers sought medical treatment at the hospital shortly after the fire. (Byers Dep. 16-17.) Byers alleges Ham's Human Resources Department assured him they would cover his hospital bill because he was at the hotel for work purposes. (Id. at 22.) Ham's never paid the medical bills. (Id. at 22-23, 48.)

Byers' last day of actual work was either July 16 or 17. (Compare Robertson Dep. 58 (July 16), with Schumacher Aff. ¶ 6 (July 17).) He did not work on the 18th or 19th and was terminated on the 20th. (Robertson Dep. 46; Ex. G, Termination Notice.) He did not complete the MIT program. (Robertson Dep. 22.) Lindsey Schumacker, Regional Director of Human Resources for Ham's, testified that Byers was fired for failing to show up at his scheduled work time on July 20. (Schumacher Aff. ¶ 6.) Byers' Termination Notice, however, lists unprofessional behavior, misconduct, and the fire as reasons for Byers' dismissal. (Ex. G, Termination Notice.) The notice does not mention Byers' failure to report to work. (Id.) Shaun Robertson, Ham's Manager, claimed that, even before the fire and subsequent absenteeism, he intended to terminate Byers on July 20 due to work-related issues. (Robertson Dep. 39-40.)

---

[4] There is some disagreement regarding how much of the hotel had to be closed. Ham's and Chelda maintain approximately 75% of the hotel had to be closed. (Ex. G, Termination Notice.) Byers argues that figure is excessive. (Byers Dep. 62.)

3

## II. PROCEDURAL BACKGROUND

Plaintiffs Rivett Group, LLC ("Rivett"),[5] Super 8 Motels, Inc. ("Super 8"), and Eastern Hospitality Management, Inc. ("Eastern Hospitality")[6] filed the present lawsuit on September 15, 2008, based on diversity jurisdiction.[7] Although Plaintiffs' initial complaint only alleged claims against Defendants Chelda and Byers, Plaintiffs subsequently filed their First Amended Complaint adding Ham's as a Defendant. Plaintiffs' complaint alleges Plaintiffs suffered damages in excess of $312,091.17 due to the negligence of Defendants. Defendant Chelda filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, but the Motion was denied for failure to comply with the Court's Pretrial Order. Defendants Chelda and Ham's then filed a Motion for Summary Judgment. Chelda argues that it cannot be held directly or indirectly liable because Byers was not an employee of Chelda. Additionally, the motion contends Ham's cannot be held liable because Byers was not acting in the course or scope of employment at the time the fire started. Plaintiffs filed a response opposing Defendants Chelda and Ham's motion, as did Defendant Byers.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The

---

[5] Plaintiff Rivett is a corporation engaged in the business of owning, operating, and/or managing Super 8 Motels. (First Am. Compl. ¶ 2.)

[6] Eastern Hospitality is also a corporation engaged in the business of owning, operating, and/or managing Super 8 Motels. (First Am. Compl. ¶ 4.)

[7] Plaintiffs Rivett and Eastern Hospitality are both organized under the laws of the State of South Dakota and have their principal places of business in Aberdeen, SD. (First Am. Compl. ¶ 1, 3.) Plaintiff Super 8, doing business as Danville Super 8 Motel, is a corporation organized and existing under the laws of the Commonwealth of Virginia and has its principal place of business in Danville, VA. (First Am. Compl. ¶ 5.) Defendants Chelda and Ham's are both organized under the laws of the State of North Carolina with principal places of business in Greensboro, NC. (First Am. Compl. ¶ 7, 9.) Defendant Byers was a resident of Winston-Salem, NC at the time of the incident giving rise to this litigation. (First Am. Compl. ¶ 11.)

court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654,655 (1962).  A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## IV.     DISCUSSION

### A.  Defendant Ham's is Not Entitled to Summary Judgment

The issues before me with respect to Ham's are: (1) whether material facts concerning the cause of the fire and the scope of Byers' employment remain in dispute; and (2) whether Ham's is entitled to judgment as a matter of law.  I find that neither issue favors Ham's, thereby making summary judgment inappropriate as to that party.

First, several material facts remain in dispute.  Regarding the respondeat superior inquiry, it is unclear whether Byers worked on July 19, 2005.  Byers claims he attended a manager's meeting that day.  That averment is supported by the testimony of Donna Mallot, Super 8's Manager, who saw Byers leave the hotel to go to Ham's around 2:45 P.M. on July 19.  Ham's Manager, Shaun Robertson, and Human Resources Director, Lindsey Schumacher, both assert Byers had not worked since either July 16 or 17 and was not scheduled to work again until July 20. Additionally, Mr. Robertson claims Byers was demoted from his managerial position to an hourly wage position about two weeks prior to the fire.  Byers denies he was ever demoted, arguing he remained a salaried employee of Ham's until his termination.  Byers' pay records appear to support his argument.  Finally, regarding the issue of causation, it is unclear how the fire started.  Although Plaintiffs, Ham's, and Chelda assert the fire started when Byers either

5

knocked or threw a cigarette into the waste basket, Byers remains adamant that the other managers and managers-in-training in his room dumped the contents of the ash tray into the trash can. These three disputed facts, among others, preclude me from granting summary judgment to Ham's because each of these could have a material impact on the case. The first two would likely influence my determination regarding the scope of Byers' employment and the relation of Byers' conduct to that employment. Likewise, the third would have an important impact on who caused the damage of which Plaintiffs complain.

Where there is a genuine dispute as to material facts, summary judgment is inappropriate. Anderson, 477 U.S. at 247-48; Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Here, the conflicting testimony creates sufficient doubt to preclude summary judgment. The conflicting evidence regarding the scope of Byers' duties and whether Byers worked on July 19 would likely have a material impact on the respondeat superior question. Likewise, Byers' testimony, if assumed to be true and read in the light most favorable to him, would lead to the conclusion that the conduct of the other managers in his room caused the fire. Such a deduction would likely preclude Ham's from escaping liability if the other managers' conduct fell within the scope of employment. Given these disputes of fact, summary judgment is inappropriate for Ham's.

Second, Ham's is not entitled to judgment as a matter of law, as it is not clear whether Byers' conduct was within the scope of his employment. Whether an employee's act falls within the scope of the employee's job duties is determined based on a balance of factors, including: (1) the extent to which the employee was motivated by a desire to serve the employer in engaging in the tortuous conduct; (2) whether the tortuous conduct was committed during the time the

employee was on duty; (3) whether the tortuous conduct was committed while the employee was on the employer's premises or on premises where the employee's duties would naturally cause the employee to go; and (4) the extent to which the impetus for the tortuous conduct was casually related to the employee's employment. See Gulf Underwriters Ins. Co. v. KSI Servs., Inc., 416 F. Supp. 2d 417, 420-21 (E.D.Va. 2006); Gina Chin & Assocs. v. First Union Bank, 260 Va. 533, 542-46, 537 S.E.2d 573, 577-580 (2000).

Under Virginia case law, "proof of the employment relationship creates a *prima facie* rebuttable presumption of the employer's liability. Thus, when an employer-employee relationship has been established, the burden is on the [employer] to prove that the [employee] was *not* acting within the scope of his employment . . . ." Gina Chin, 260 Va. at 542, 537 S.E.2d at 577-78 (internal quotations and citations omitted). Summary judgment is only appropriate on a question of respondeat superior when the conduct consists of either a slight deviation or a marked and unusual departure from the employer's business. Id. at 544, 537 S.E.2d at 578. When the facts fall between those two extremes, a jury should decide whether the behavior was within the scope of employment. Id. In other words, "[i]f the evidence leaves in doubt the question whether the employee acted within the scope of the employment, the issue is to be decided by the jury and not as a matter of law by the trial court." Majorana v. Crown Petroleum Corp., 260 Va. 521, 527 (2000). In this case, the conduct does not seem to clearly fall within or outside the scope of duties, and there is sufficient doubt to require the question to go to the jury. On one hand, Byers was in a hotel room paid for by Ham's and at Ham's requirement. He stated he would not have stayed there but for Ham's insistence. He believed he was on duty twenty-four hours a day while at the hotel. He may have worked previously that day, and he was scheduled to work the following day. He was subject to being called to duty at times he was at

7

the hotel but not scheduled to work, he would have been disciplined if he refused to come in when called, and he had been so called on at least one prior occasion. Ham's provided him with training materials to study when he was not at the restaurant. He allegedly discussed work-related topics with other managers and managers-in-training in his hotel room on the night of the fire. Ham's likely assumed Byers was in the course of employment at the time of the fire, because they initially offered to cover his medical bills. On the other hand, he might not have worked in the preceding three days, and he was not performing services for Ham's benefit at the time the fire started. Smoking was not part of his job description and was not necessary to fulfill his explicitly delegated duties. Finally, Byers did not intend to benefit Ham's or to promote a business-related interest by smoking. Based on this, it is not clear whether the incident fell within the scope of employment.

Moreover, it appears Virginia courts have never addressed the specific question of whether the actions of an employee staying in a hotel may be imputed to an employer under the doctrine of respondeat superior. Virginia's Supreme Court has held that a trucker who died while staying in a hotel overnight, at the direction of his employer, was, at the time of death, "engaged in and about his master's business." Southern Motor Lines v. Alvis, 200 Va. 168, 171-72, 104 S.E.2d 735, 738-39 (1958). However, that case addressed workers' compensation, not respondeat superior. Virginia courts have made the following caveat clear:

> [T]he test for determining whether an accidental injury "[arose] out of and in the course of employment," within the meaning of [Virginia's workers' compensation act], is not the same as the test for determining whether a servant acted within the scope of his employment under the doctrine of respondeat superior.

Sayles v. Piccadilly Cafeterias, Inc., 242 Va. 328, 331, 410 S.E.2d 632, 633 (1991). Moreover, although Federal Insurance Co. v. Ward, 166 Fed. Appx. 24 (4th Cir. 2006), provides a similar

set of facts, Plaintiffs are likely correct that the Fourth Circuit relied on overturned precedent in reaching their opinion given that Gina Chin so clearly rejected the interpretation of Virginia's respondeat superior test that made employee intent the focal point of the inquiry, see Gina Chin, 260 Va. at 541. Plaintiffs' argument is buttressed by the fact that the U.S. District Court for the Eastern District of Virginia has already refused to follow Ward, noting that placing too much reliance on the employee's intent would "yield the anomalous result of excluding from an employee's scope of employment many routine work activities . . . such as using the restroom or getting a drink of water." Gulf Underwriters, 416 F. Supp. 2d at 423 n.16.[8] The Fourth Circuit, in an unpublished opinion that did not address the scope-of-employment test, affirmed the Eastern District's opinion in that case. See Gulf Underwriters Ins. Co. v. KSI Servs., Inc., 233 Fed. Appx. 239 (4th Cir. 2007).

Based on the foregoing, it does not appear that Ham's and Chelda are entitled to judgment as a matter of law. This specific respondeat superior question has yet to be reached by the courts of Virginia, and it does not appear to be clearly inside or outside the course of Byers' duties. Therefore, under Virginia precedent, the question should be decided by the jury at trial rather than by the Court on a motion for summary judgment. See Majorana, 260 Va. at 527.

---

[8] It is admittedly possible to reconcile Kensington and Ward with Gina Chin and Gulf Underwriters. Both Kensington and Ward involved apparently accidental conduct. For instance, in Kensington, a security guard accidentally shot and injured another person while horsing around. 234 Va. at 432, 362 S.E.2d at 901. Likewise, in Ward, the employees flicked ashes into a waste basket, and a fire started sometime later. 166 Fed. Appx. at 26. On the other hand, both Gina Chin and Gulf Underwriters involved criminal conduct. Gina Chin arose out of an employee's participation in a check forgery scheme. 260 Va. at 537, 537 S.E.2d at 574. Similarly, Gulf Underwriters involved an employee's embezzlement. 416 F. Supp. 2d at 419. It is arguable that Gina Chin's command that courts not render employee intent dispositive on the issue of respondeat superior was only meant to apply where the conduct was criminal in nature. Nevertheless, it appears more likely that the Gina Chin court sought to overrule Kensington in more situations than merely those involving criminal conduct. In the operative paragraph rejecting Kensington's determinative focus on employee intent, the Virginia Supreme Court stated that the Court's precedent does not support the Kensington interpretation. Gina Chin, 260 Va. at 541, 537 S.E.2d at 577. Of the two cases cited by the Court in support of this proposition, one of the cases involved apparently non-criminal conduct. See Plummer v. Ctr. Psychiatrists, Ltd., 252 Va. 233, 238, 476 S.E.2d 172, 175 (1966).

9

### B. Defendant Chelda is Entitled to Summary Judgment

Unlike the case with Ham's, Plaintiffs have failed to articulate any basis for imposing liability on Chelda. The undisputed facts before me do not demonstrate a connection between Byers and Chelda sufficient to hold Chelda accountable for Byers' conduct. I therefore find that Chelda is entitled to judgment as a matter of law.

It is well established under Virginia law that "a plaintiff who seeks to recover damages from a master for injuries caused by a servant must establish that the master-servant relationship 'existed at the time of the injuries.'" Sayles, 242 Va. at 332, 410 S.E.2d at 634 (quoting McNeill v. Spindler, 191 Va. 685, 694, 62 S.E.2d 13, 17 (1950)). Virginia courts usually consider four factors in considering the existence of a master-servant relationship: "(1) selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action." Stover v. Ratliff, 221 Va. 509, 511, 272 S.E.2d 40, 52 (1980) (internal quotation omitted). Of these factors, the fourth is the most significant element, and the other three are not essential. Id. at 511-12, 272 S.E.2d at 52.

Under the law of Virginia, an employee of a subsidiary company is not to be treated as an employee of the parent company in the normal parent-subsidiary relationship. See Lane v. Kingsport Armature & Elec., 676 F. Supp. 108, 111 (W.D. Va. 1988). Therefore, Chelda cannot be liable unless Plaintiffs can establish a master-servant connection based on the above-listed factors. Turning to the filings in the immediate case, there appear to be only two tenuous connections between Byers and Chelda. First, Chelda was the parent company of Byers' employer, Ham's. Second, Super 8 maintained a single account for billing both Chelda and Ham's. The parties present no facts that, if assumed to be true and if read in a light most favorable to the Plaintiffs, tend to support any greater participation on Chelda's part. In other

10

words, there are no facts—disputed or otherwise—supporting the existence of any of the above-listed elements for establishing a master-servant relationship between Chelda and Byers.

Pursuant to the Federal Rules of Civil Procedure:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). Not only have the Plaintiffs failed to provide affidavits or other evidence demonstrating a master-servant connection, but they have not even *alleged* a basis for imposing liability on Chelda other than the parent-subsidiary relationship between Chelda and Ham's, which, as a matter of law, is insufficient. See Lane, 676 F. Supp. at 111. Plaintiffs' Memorandum opposing summary judgment explicitly states their intent to wait until trial to ferret out a greater connection. However, Plaintiffs should not be permitted to turn this trial into a fishing expedition. With respect to Defendant Chelda, Plaintiffs have failed to meet the burden placed upon them by Chelda and Ham's Motion for Summary Judgment. See Fed. R. Civ. P. 56(e)(2). Because there are no material facts in dispute regarding Chelda's relationship with Byers, and because Plaintiffs have failed to articulate any theory for imposing respondeat superior liability on Chelda, the Motion for Summary Judgment should be granted with respect to Defendant Chelda.

## V. CONCLUSION

For the reasons stated above, I will **DENY** the Motion for Summary Judgment with respect to Ham's but **GRANT** the Motion with respect to Chelda.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 28th day of September, 2009.

                                                s/Jackson L. Kiser
                                                Senior United States District Judge